**ORIGINAL**

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 18 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

TRACFONE WIRELESS, INC.,
a Delaware Corporation,

      Plaintiff,

v.

ZIP WIRELESS PRODUCTS, INC.,
a Georgia corporation;
TIMOTHY H. YEAGER, individually;
and WILLIAM R. YEAGER, individually,

      Defendants.

_____/

CASE NO. **1:09-CV-2575**

**(Jury Trial Demanded)**

**TCB**

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, TRACFONE WIRELESS, INC. ("TracFone"), a Delaware corporation, sues Defendants ZIP WIRELESS PRODUCTS, INC., a Georgia corporation ("Zip Wireless"), TIMOTHY H. YEAGER, individually ("Timothy"), and WILLIAM R. YEAGER ("William") (collectively "Defendants"), and states:

1.    This is an action for damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees, and injunctive relief arising out of Defendants' unlawful business enterprise that willfully infringes on TracFone's incontestable federal trademarks, copyrights and other rights related to TracFone's prepaid wireless service—which is marketed and sold under the TracFone, Net10,

SafeLink and Straight Talk brands—and the wireless telephones that are specially manufactured for TracFone to be used with its wireless service marketed and sold under one of the TracFone, NET10, SafeLink or Straight Talk brands ("TracFone Prepaid Phones" or "Phones").

2.     As set forth in greater detail below, Defendants are engaged in unlawful business practices involving the unauthorized and unlawful bulk purchase and resale of TracFone Prepaid Phones, unauthorized and unlawful computer unlocking or reflashing of TracFone Prepaid Phones, alteration of TracFone's copyrighted and proprietary software installed in the Phones, trafficking of the Phones for profit, and for other violations of Federal statutory law.

## PARTIES

3.     TracFone is a Delaware corporation that maintains its principal place of business in Miami-Dade County, Florida.

4.     Defendant Zip Wireless Products, Inc. is an Illinois corporation that upon information and belief, maintains its principal place of business in Georgia and transacts a substantial amount of business in the Northern District of Georgia.

5.     Defendant Timothy H. Yeager is an individual, who upon information and belief, is a resident of the State of Georgia and who has engaged in illicit conduct and business transactions in the Northern District of Georgia as alleged

herein. Timothy H. Yeager is the Chief Executive Officer and Secretary of Zip Wireless Products, Inc.

6.    Defendant William R. Yeager is an individual, who upon information and belief, is a resident of the State of Georgia and has engaged in illicit conduct and business transactions in the Northern District of Georgia as alleged herein. William R. Yeager is the Chief Financial Officer of Zip Wireless Products, Inc.

7.    All conditions precedent to filing this action have been performed, waived or excused.

8.    TracFone has retained the undersigned attorneys to represent it in this action and has agreed to pay its attorneys a reasonable fee for their services.

## JURISDICTION

9.    Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§1331, 1332, 1338, and 17 U.S.C. §1203 because TracFone's claims for violations of the United States Trademark Act, Title 15 of the United States Code, and United States Copyright Act, Title 17 of the United States Code, arise under federal law. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over TracFone's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

10.    Upon information and belief, Defendants reside in Georgia and have

engaged in systematic and ongoing business transactions in the State of Georgia with citizens of the State of Georgia, and within this District.

11.     Specifically, Defendants engaged in systematic and ongoing business transactions in the State of Georgia with citizens of the State of Georgia. On information and belief, Defendants have purchased and sold at least hundreds of thousands of dollars worth of TracFone Prepaid Phones to companies and individuals located in the Northern District of Georgia. These actions have caused substantial damage to TracFone within this District. TracFone expects to uncover evidence of many additional transactions through the discovery process in this action, but is already aware of substantial illicit transactions by the Defendants within this District.

12.     Defendants are subject to the general personal jurisdiction of this Court because they reside in this District and/or have had continuous and substantial business connections to the State of Georgia.

**VENUE**

13.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) and 28 U.S.C. §1400, because at least one of the Defendants reside in this District, a substantial part of the events or omissions giving rise to the claim occurred in this District, the impact of Defendants' misconduct occurred in this District, and the

Defendants are subject to personal jurisdiction in this District.

## BACKGROUND

14.    This is an action for damages and injunctive relief arising out of Defendants' unlawful business enterprises that willfully infringe on TracFone's trademarks, copyrights and other rights related to TracFone's prepaid wireless service marketed under the TracFone, NET10, SafeLink and Straight Talk brands ("TracFone's Prepaid Wireless Service,") and TracFone's specially manufactured wireless telephones offered for sale in connection with service under one of the TracFone, NET10, SafeLink or Straight Talk brands ("TracFone Prepaid Phones" or "Phones") designed for use exclusively in the United States, Puerto Rico, and U.S. Virgin Islands with TracFone's Prepaid Wireless Service.

15.    As set forth in greater detail below, Defendants are engaged in, and knowingly facilitate and encourage others to engage in, unlawful business practices involving the unauthorized and unlawful bulk purchase and resale of TracFone Prepaid Phones, unauthorized and unlawful computer unlocking or reflashing of TracFone Prepaid Phones, alteration of TracFone's copyrighted and proprietary software computer code installed in the Phones, and trafficking of the Phones for profit (the "Bulk Resale Scheme").

16.    Defendants and/or their co-conspirators perpetrate their Bulk Resale Scheme by, among other things, acquiring bulk quantities of TracFone Prepaid

Phones from internet sites and retail stores such as Wal-Mart, Target or Sam's Club, and by soliciting others ("Runners") to purchase TracFone Prepaid Phones in bulk for the benefit of Defendants.

17.    Defendants and/or their co-conspirators then remove the TracFone Prepaid Phones' original packaging and ship them overseas.

18.    Defendants and/or their co-conspirators acquire the TracFone Prepaid Phones with the knowledge and intent that the Phones will not be activated for use on the TracFone Prepaid wireless networks. Instead, the Phones are computer-hacked.

19.    The purpose of this hacking, known as "reflashing" or "unlocking," is to erase, remove and/or disable TracFone's copyrighted and proprietary software installed in the Phones, which enables the use of the TracFone Prepaid Phones exclusively on TracFone's Prepaid Wireless Service.

20.    The reflashed Phones are then trafficked and resold, at a premium, as new, under TracFone's trademarks.

21.    Defendants are not, and have never been, authorized retailers or distributors of TracFone Prepaid Phones.

22.    In an effort to prevent these unlawful business practices, TracFone retailers have implemented policies limiting the number of TracFone Prepaid Phones an individual may purchase on a daily basis.

23.    Defendants hire Runners and take other steps to circumvent these sales limitation policies in perpetrating their Bulk Resale Scheme.

24.    Defendants' conduct, together with that of currently unknown civil and criminal co-conspirators, is causing TracFone to suffer millions of dollars in losses and has caused immediate and irreparable injury to TracFone.

## TRACFONE'S BUSINESS MODEL

25.    TracFone is the largest provider of prepaid wireless telephone service in the United States, and markets its service under the TracFone, NET10, SafeLink and Straight Talk brands.  TracFone's service enables its customers to prepay for their wireless service by purchasing TracFone airtime cards and specially manufactured wireless Phones.   Customers load airtime into their TracFone Prepaid Phones using codes generated from PIN numbers found on the airtime cards, or via TracFone's website.  TracFone Prepaid Phones and airtime cards are sold through major national retailers such as Wal-Mart, Target, and Sam's Club.

26.    TracFone is considered a "Mobile Virtual Network Operator" or "MVNO" in the wireless industry.  The company is not a facilities-based wireless provider like AT&T, Verizon, T-Mobile or Sprint/Nextel.   Rather, TracFone contracts with facilities-based wireless providers to purchase airtime on their networks for use by TracFone's customers.

27. TracFone's business model is based upon TracFone's ability to deliver an affordable product to its consumers. Therefore, TracFone subsidizes its customers' acquisition of the TracFone Prepaid Phones by selling its Phones for substantially less than the Phones cost TracFone. TracFone recoups this subsidy through profits earned on the sale of the TracFone prepaid airtime cards that are required to make and receive calls on the TracFone Prepaid Phones. TracFone is able to offer its Phones at affordable prices only if the Phones are used as intended with the TracFone Prepaid Wireless Service.

28. Manufacturers that produce wireless phones for TracFone install special proprietary prepaid software, developed, copyrighted, and owned by TracFone ("TracFone Prepaid Software"), into the TracFone Prepaid Phones. The TracFone Prepaid Software prevents TracFone Prepaid Phones from being used without loading airtime minutes from a TracFone Prepaid airtime card.

## TRACFONE'S FEDERALLY PROTECTED RIGHTS

29. TracFone is one of the oldest and leading providers of prepaid wireless telecommunications services in the United States. TracFone has used, and continues to use, trademarks in commerce including the marks TracFone, NET10, SafeLink and Straight Talk. In particular, TracFone owns and has also used the registered trademarks identified below:

a. Incontestable United States Trademark Registration No. 2,114,692 for TracFone, used in connection with: (1) electronic communications equipment, namely, cellular telephones, prepaid airtime cellular telephones and cellular telephone accessories, namely, prepaid airtime debit cards, battery chargers, stands, antennae, voice amplifiers and microphones; computer programs for use in controlling and monitoring prepaid airtime cellular telephone service, in International Class 9; (2) providing cellular telephone services and providing monitoring and control services for use in conjunction with prepaid airtime cellular phones and debit cards, in International Class 38; and (3) wholesale distributorship featuring of cellular telephones, prepaid airtime cellular telephones and prepaid airtime debit cards, and software for controlling and monitoring prepaid airtime cellular service, in International Class 42, issued on November 18, 1997 and based on a first use date of June 30, 1996;

b. United States Trademark Registration No. 3,224,929 for TracFone Nationwide Prepaid Wireless and Design, used in connection with electronic communications equipment, namely, cellular telephones; prepaid air time cellular telephones; cellular telephone accessories, namely, battery chargers, stands, antennae, headset kits comprised of hands free electronic earpiece with microphone and holster, hands free headsets, cases with flaps, power adapters,

batteries, carry sleeves, face plates, belt clips, holsters, mounting attachments, in International Class 9, issued on April 3, 2007 and based on a first use date of December 31, 2005;

c.     United States Trademark Registration No. 3,222,623 for TracFone Nationwide Prepaid Wireless and Design, used in connection with distributorship services featuring cellular telephones, prepaid air time cellular telephone and prepaid air time debit cards, and software for controlling and monitoring prepaid air time cellular service, in International Class 35, issued on March 27, 2007 and based on a first use date of December 31, 2005;

d.     United States Trademark Registration No. 3,118,250 for NET10, used in connection with: (1) monitoring the use of debit cards, in International Class 36; and (2) providing monitoring and control services for use in conjunction with prepaid air time cellular and mobile phones, in International Class 38, issued on July 18, 2006 and based on a first use date of March 1, 2005;

e.     United States Trademark Registration No. 3,255,754 for NET10 Pay As You Go Made Simple and Design, used in connection with cellular telephone communications services provided via prepaid air time cellular telephones and prepaid air time cellular calling card services, in International Class 38, issued on June 26, 2007 and based on a first use date of December 31, 2005;

f.     United States Trademark Registration No. 3,253,506 for NET10 Pay As You Go Made Simple and Design, used in connection with electronic communications equipment, namely, cellular telephones; prepaid air time cellular telephones; cellular telephone accessories, namely, telephone battery chargers, telephone battery charger stands, telephone antennae, headset kits comprised of hands free electronic earpiece with microphone and holster specially adapted for cell phones, hands free headsets comprising head-phones and a microphone, cases with flaps specially adapted for cell phones, power adapters, batteries, carry sleeves specially adapted for cell phones, decorative cell phone face plates, belt clips, holsters, and mounting attachments specially adapted for carrying cell phones, in International Class 9, issued on June 19, 2007 and based on a first use date of December 31, 2005; and,

g.     United States Trademark Registration No. 3,251,389 for NET10 Pay As You Go Made Simple and Design, used in connection with distributorship services featuring cellular telephones, prepaid air time cellular telephones and prepaid air time debit cards, and software for controlling and monitoring prepaid air time cellular service, in International Class 35, issued on June 12, 2007 and based on a first use date of December 31, 2005.

h.     United States Trademark Registration No. 3,630,321 for SafeLink Wireless and Design, used in connection with cellular telephone

communications services; cellular telephone telecommunications services provided via prepaid air time cellular telephones and prepaid air time cellular telephone calling card services, in International Class 38, issued on June 2, 2009 and based on a first use date of September 12, 2008.

30.     TracFone's     aforementioned     marks     (the     "Federal     Trademark Registrations") constitute the lawful, valued, subsisting and exclusive property of TracFone, and as a result of the high quality of TracFone's products, services, sales, promotion and advertising thereof, the marks have become an intrinsic and essential part of the valuable goodwill and property of TracFone, and are well known and established to customers and the trade as symbols identifying and distinguishing TracFone's products and services, and signifying distinctive services of exceptional quality.     True and correct copies of the certificates of registration issued by the United States Patent and Trademark Office for the Marks are attached as **Composite Exhibit A**.

31.     On or before May 29, 2009, TracFone has used the mark Straight Talk and Straight Talk and Design (the "Straight Talk Marks") in connection with cellular telephone communications services and electronic communications equipment.

32.     The Straight Talk Marks constitute the lawful, valued, subsisting and exclusive property of TracFone, and as a result of the high quality of TracFone's

products, services, sales, promotion and advertising thereof, the marks have become an intrinsic and essential part of the valuable goodwill and property of TracFone, and is well known and established to customers and the trade as symbols identifying and distinguishing TracFone's products and services, and signifying distinctive services of exceptional quality. True and correct copies of the Straight Talk Marks are attached as **Exhibit B**. The Straight Talk Marks and Federal Trademark Registrations will collectively be referred to as the "Marks."

33. TracFone owns a valid copyright registration, TX 6-515-894, on the TracFone Prepaid Software. A true and correct copy of the certificate of registration is attached as **Exhibit C**.

## TERMS AND CONDITIONS REGARDING THE USE OF TRACFONE PREPAID PHONES

34. TracFone Prepaid Phones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the Phones. These Terms and Conditions are set forth in printed inserts that are included in the packaging with every TracFone Phone, and are also available to the public on TracFone's website. They are also referenced in printed warnings that are placed on the outside of the retail packaging of the Phones. The Terms and Conditions and language on the packaging constitute a valid binding contract.

35.     The retail packaging in which new TracFone Prepaid Phones are sold contains the following language that is conspicuously printed in all capital letters in a red banner on the outside of the package:

> THIS TRACFONE HANDSET IS SOLD EXCLUSIVELY FOR USE WITH TRACFONE PREPAID WIRELESS SERVICE. YOU AGREE NOT TO TAMPER WITH OR ALTER THE SOFTWARE OR HARDWARE IN THIS PHONE, OR ASSIST OTHERS IN SUCH ACTS, OR TO EXPORT TRACFONE HANDSETS OUTSIDE OF THE UNITED STATES. THESE ACTS VIOLATE TRACFONE'S RIGHTS AND COULD VIOLATE STATE AND FEDERAL LAWS. TRACFONE WILL PROSECUTE VIOLATORS TO THE FULL EXTENT OF THE LAW. BY PURCHASING OR OPENING THIS PACKAGE, YOU ARE AGREEING TO THESE TERMS AND THE TERMS AND CONDITIONS OF SERVICE IN THE ENCLOSED USER GUIDE (AND AVAILABLE AT WWW.TRACFONE.COM).

36.     NET10 handsets have similar language on the packaging, also on a red background in bold letters, as follows:

> **This NET10 handset is sold exclusively for use with NET10 prepaid wireless service. By purchasing or opening this package, you are agreeing to these terms and the terms and conditions of service enclosed (and available at www.net10.com). You agree not to tamper with or alter the software or hardware in this phone, or**

**assist others in such acts, or to export NET10 handsets outside of the United States. These acts violate TracFone's rights and could violate state and federal laws. TracFone will prosecute violators to the full extent of the law.**

37.     Packaging for the SafeLink and Straight Talk handsets have similar conspicuous notifications that inform purchasers that they are bound by the Terms and Conditions.

38.     The Terms and Conditions included in the TracFone handset packaging also provide, in pertinent part, as follows:

**UNAUTHORIZED USAGE; TAMPERING.**

The TRACFONE handset is sold exclusively for use by you, the end consumer, with the TRACFONE prepaid wireless Service available solely in the United States, Puerto Rico and the U.S. Virgin Islands. Any other use of your TRACFONE handset, including without limitation, any resale, unlocking and/or reflashing of the handset is unauthorized and constitutes a violation of your agreement with TracFone Wireless. You agree not to unlock, reflash, tamper with or alter your TRACFONE or its software, enter unauthorized PIN numbers, engage in any other unauthorized or illegal use of your TRACFONE or the Service, or assist others in such acts, or to sell and/or export TRACFONE handsets outside of the United States. These acts violate TRACFONE's rights and state and federal

laws. Improper, illegal or unauthorized use of your TRACFONE is a violation of this agreement and may result in immediate discontinuation of Service and legal action. TRACFONE will prosecute violators to the full extent of the law. You agree that any violation of this agreement through your improper, illegal or unauthorized use or sale of your TRACFONE shall entitle TracFone Wireless to recover liquidated damages from you in an amount not less than $5,000 per TRACFONE handset purchased, sold, acquired or used in violation of this agreement.

39.    Similarly, the Terms and Conditions that are included in the packaging for the NET10 handsets provide, in pertinent part, as follows:

**UNAUTHORIZED USAGE; TAMPERING.**

The NET10 handset is sold exclusively for use by you, the end consumer, with the NET10 Prepaid Wireless Service available solely in the United States, Puerto Rick and the U.S. Virgin Islands. Any other use of your NET10 handset, including without limitation, any resale, unlocking and/or reflashing of the handset is unauthorized and constitutes a violation of your agreement with NET10. You agree not to unlock, reflash, tamper with or alter your NET10 or its software, enter unauthorized PIN numbers, engage in any other unauthorized or illegal use of your NET10 or the Service, or assist others in such acts, or to sell and/or export NET10

16

handsets outside of the United States. These acts violate NET10's rights and state and federal laws. Improper, illegal or unauthorized use of your NET10 phone is a violation of this agreement and may result in immediate discontinuation of Service and legal action. NET10 will prosecute violators to the full extent of the law. You agree that any violation of this agreement through your improper, illegal or unauthorized use or sale of your NET10 phone shall entitle NET10 to recover liquidated damages from you in the amount of not less than $5,000 per NET10 handset purchased, sold, acquired or used in violation of this agreement.

40.    The Terms and Conditions that are included in the packaging with all SafeLink handsets provide, in pertinent part:

**UNAUTHORIZED USAGE; TAMPERING.** The SAFELINK WIRELESS handset is provided exclusively for use by you, the end consumer with the SAFELINK WIRELESS Service available solely in the United States, Puerto Rico and the U.S. Virgin Islands. Any other use of your SAFELINK WIRELESS handset, including without limitation, any resale, unlocking and/or re-flashing of the handset is unauthorized and constitutes a violation of your agreement with TracFone Wireless. You agree not to unlock, re-flash, tamper with or alter your SAFELINK WIRELESS phone or its software, enter unauthorized PIN, engage in any other unauthorized or illegal use of your SAFELINK WIRELESS phone or the Service, or assist others in such acts, or to sell and/or export SAFELINK WIRELESS handsets

outside of the United States. These acts violate TracFone Wireless™ rights and state and federal laws. Improper, illegal or unauthorized use of your SAFELINK WIRELESS phone is a violation of this agreement and may result in immediate discontinuance of Services and legal action. TracFone Wireless will prosecute violators to the full extent of the law. You agree that any violation of this agreement through your improper, illegal or unauthorized use or sale of your SAFELINK WIRELESS phone shall entitle TracFone Wireless to recover liquidated damages from you in an amount of not less than $5,000 per SAFELINK WIRELESS handset purchased, sold, acquired or used in violation of this agreement.

41. The Terms and Conditions that are included in the packaging with all Straight Talk handsets provide, in pertinent part:

UNAUTHORIZED USAGE: The Straight Talk phone is sold exclusively for use with the Straight Talk Service. You agree not to tamper with or alter your Straight Talk phone or its software, enter unauthorized Service Card PIN, engage in any other unauthorized or illegal use of your Straight Talk phone or the Service, or assist others in such acts, or export Straight Talk phones outside of the United States. Improper, illegal or unauthorized use of your Straight Talk phone may result in immediate discontinuance of Service. These acts violate Straight Talk's rights and could violate state and federal laws. Straight Talk will prosecute violators to the full extent of the law.

42.    The restrictions and limitations in the Terms and Conditions and on the packaging are intended to restrict the use of TracFone Prepaid Phones solely to TracFone Prepaid Wireless Service.

43.    TracFone Prepaid Phones may access TracFone Prepaid Wireless Service only within the United States, the U.S. Virgin Islands and Puerto Rico (the "Coverage Area").

44.    TracFone Prepaid Phones cannot access any wireless network outside of the Coverage Area unless the TracFone Prepaid Software is unlawfully removed or altered.

## DEFENDANTS' MISCONDUCT

45.    TracFone has discovered that, although large quantities of its Phones are being purchased at retailers throughout the United States, a significant number of these Phones are not being activated for use on the TracFone Prepaid Wireless System.

46.    Instead, entities and individuals such as Defendants are purchasing and selling TracFone Prepaid Phones in bulk quantities for use outside of the TracFone Prepaid Wireless Service and Coverage Area. The Phones are removed from their original packaging, shipped overseas, and "unlocked" or "reflashed."

Defendants' actions are not for the sole purpose of lawfully connecting to a wireless telephone communication network.

47. The process of unlocking or reflashing TracFone Prepaid Phones involves circumventing the electronic protections installed in the handset, and then erasing, removing and/or disabling the TracFone Prepaid Software.

48. Once a TracFone Prepaid Phone has been unlocked or reflashed, it is no longer operable on TracFone Prepaid Wireless Service, and could be further modified so as to become operable on other cellular networks. Once this occurs, TracFone no longer has a revenue source to recoup the invested subsidy on that Phone.

49. Defendants are knowingly and willfully engaged in an enterprise that traffics in and resells unlocked or reflashed TracFone Prepaid Phones, or TracFone Prepaid Phones that they know, or reasonably should know, will be subsequently unlocked or reflashed and then resold under the Marks outside the Coverage Area as new for a substantial profit.

50. Unless unlocked or reflashed, the TracFone Prepaid Phones are inoperable as wireless telecommunications devices outside the Coverage Area.

51.     The Coverage Area is plainly disclosed in TracFone's packaging and in the Terms and Conditions. There would be no reason to ship TracFone Prepaid Phones overseas unless they were intended to be unlawfully unlocked or reflashed.

52.     Defendants are knowingly and willfully engaged in an enterprise that traffics in and resells unlocked or reflashed TracFone Prepaid Phones, or TracFone Prepaid Phones that they know, or reasonably should know, will be subsequently unlocked or reflashed and then resold under the Marks outside the Coverage Area as new for a substantial profit.

53.     Unless unlocked or reflashed, the TracFone Prepaid Phones are inoperable as wireless telecommunications devices outside the Coverage Area.

54.     The Coverage Area is plainly disclosed in TracFone's packaging and in the Terms and Conditions. There would be no reason to ship TracFone Prepaid Phones overseas unless they were intended to be unlawfully unlocked or reflashed.

55.     Defendants have purchased thousands of TracFone Prepaid Phones from a number of known bulk resellers and dealers.

56.     Defendants have purchased and/or sold thousands of TracFone Prepaid Phones to and/or from Miranda Holdings Corp., a Florida corporation, d/b/a Incomtel ("Incomtel"), a known bulk reseller of TracFone Prepaid Phones against whom TracFone obtained a Final Judgment and Permanent Injunction.

57.  By way of example, Defendant Zip Wireless Products, Inc. engaged in the following business transactions:

a.  on or about August 30, 2006, Defendant Zip Wireless Products, Inc. purchased 1 TracFone Prepaid Phone from Incomtel for approximately $36.00;

b.  on or about March 16, 2007, Defendant Zip Wireless Products, Inc. purchased 5,580 TracFone Prepaid phones from Incomtel for approximately $164,820.00;

c.  on or about March 23, 2007, Defendant Zip Wireless Products, Inc. purchased 420 TracFone Prepaid phones from Incomtel for approximately $12,180.00;

d.  on or about April 17, 2007, Defendant Zip Wireless Products, Inc. purchased 350 TracFone Prepaid phones from Incomtel for approximately $10,150.00;

e.  on or about April 25, 2007, Defendant Zip Wireless Products, Inc. purchased 100 TracFone Prepaid phones from Incomtel for approximately $2,900.00;

f.  on or about May 25, 2007, Defendant Zip Wireless Products, Inc. purchased 100 TracFone Prepaid phones from Incomtel for

approximately $2,850.00;

g.    on or about May 31, 2007, Defendant Zip Wireless Products, Inc. purchased 250 TracFone Prepaid phones from Incomtel for approximately $7,125.00;

h.    on or about July 11, 2007, Defendant Zip Wireless Products, Inc. purchased 215 TracFone Prepaid phones from Incomtel for approximately $6,127.50;

i.    on or about August 14, 2007, Defendant Zip Wireless Products, Inc. purchased 125 TracFone Prepaid phones from Incomtel for approximately $4,375.00;

j.    on or about August 16, 2007, Defendant Zip Wireless Products, Inc. purchased 2 TracFone Prepaid phones from Incomtel for approximately $68.00;

k.    on or about August 22, 2007, Defendant Zip Wireless Products, Inc. purchased 2,270 TracFone Prepaid phones from Incomtel for approximately $72,640.00;

l.    on or about August 29, 2007, Defendant Zip Wireless Products, Inc. purchased 99 TracFone Prepaid phones from Incomtel for approximately $3,465.00;

m.     on or about August 31, 2007, Defendant Zip Wireless Products, Inc. purchased 397 TracFone Prepaid phones from Incomtel for approximately $12,704.00;

n.     on or about September 6, 2007, Defendant Zip Wireless Products, Inc. purchased 492 TracFone Prepaid phones from Incomtel for approximately $16,200.00;

o.     on or about September 21, 2007, Defendant Zip Wireless Products, Inc. purchased 623 TracFone Prepaid phones from Incomtel for approximately $21,825.00;

p.     on or about September 27, 2007, Defendant Zip Wireless Products, Inc. purchased 778 TracFone Prepaid phones from Incomtel for approximately $24,896.00;

q.     on or about September 28, 2007, Defendant Zip Wireless Products, Inc. purchased 140 TracFone Prepaid phones from Incomtel for approximately $4,480.00;

r.     on or about October 2, 2007, Defendant Zip Wireless Products, Inc. purchased 823 TracFone Prepaid phones from Incomtel for approximately $26,336.00;

s.     on or about October 3, 2007, Defendant Zip Wireless Products,

Inc. purchased 542 TracFone Prepaid phones from Incomtel for approximately $16,802.00;

t.      on or about October 9, 2007, Defendant Zip Wireless Products, Inc. purchased 1,037 TracFone Prepaid phones from Incomtel for approximately $33,184.00;

u.      on or about October 22, 2007, Defendant Zip Wireless Products, Inc. purchased 613 TracFone Prepaid phones from Incomtel for approximately $19,616.00;

v.      on or about October 24, 2007, Defendant Zip Wireless Products, Inc. purchased 596 TracFone Prepaid phones from Incomtel for approximately $19,072.00;

w.      on or about November 6, 2007, Defendant Zip Wireless Products, Inc. purchased 1 TracFone Prepaid phone from Incomtel for approximately $32.00;

x.      on or about November 7, 2007, Defendant Zip Wireless Products, Inc. purchased 1,010 TracFone Prepaid phones from Incomtel for approximately $32,320.00;

y.      on or about November 8, 2007, Defendant Zip Wireless Products, Inc. purchased 460 TracFone Prepaid phones from Incomtel for

approximately $14,720.00;

z.      on or about November 14, 2007, Defendant Zip Wireless Products, Inc. purchased 599 TracFone Prepaid phones from Incomtel for approximately $19,168.00;

aa.     on or about November 27, 2007, Defendant Zip Wireless Products, Inc. purchased 299 TracFone Prepaid phones from Incomtel for approximately $9,567.00;

bb.     on or about January 23, 2008, Defendant Zip Wireless Products, Inc. purchased 500 TracFone Prepaid phones from Incomtel for approximately $14,900.00;

cc.     on or about February 6, 2008, Defendant Zip Wireless Products, Inc. purchased 635 TracFone Prepaid phones from Incomtel for approximately $18,923.00; and

dd.     on or about March 5, 2008, Defendant Zip Wireless Products, Inc. purchased 120 TracFone Prepaid phones from Incomtel for approximately $3,480.00.

58.     Upon information and belief, Defendants and/or their co-conspirators have also actively solicited Runners to purchase large quantities of TracFone

Prepaid Phones from Target, Wal-Mart, Sam's Club, and other retailers, for sale to Defendants.

59.    The active solicitation of Runners by Defendants and/or their co-conspirators includes contacting Runners and requesting that they obtain specific brands and models of TracFone Prepaid Phones.

60.    To further the Bulk Resale Scheme, Defendants and Runners, among other things, conspire and work in concert to circumvent retailers' policies limiting the number of TracFone Prepaid Phones an individual may purchase.

61.    Defendants and Runners are often able to buy the Phones without paying State or other taxes associated with the purchase because of the large volume of Phones they purchase.

62.    An agreement and conspiracy existed and continues to exist between and among the Defendants and other co-conspirators, to unlawfully bulk purchase, traffic and resell unlawfully reflashed and counterfeit TracFone Prepaid Phones under the Marks.

63.    Defendants each knowingly agreed to engage, and did engage, in one or more overt acts in furtherance of the conspiracy as set forth with more particularity in this complaint.

64. TracFone has been proximately damaged by the conspiracy and Defendants' actions in furtherance of the conspiracy.

## SUBSTANTIAL HARM CAUSED BY DEFENDANTS' MISCONDUCT

65. Defendants' actions substantially harm TracFone by depriving TracFone of the opportunity to recoup its losses on the sale of its TracFone Prepaid Phones and to earn profits by providing wireless service to legitimate TracFone consumers.

66. Since the Defendants often remove the Phones from their original packaging and/or ship the Phones outside the United States, they do not carry TracFone's manufacturer's warranty. Accordingly, TracFone Prepaid Phones differ materially from the genuine TracFone Prepaid Phones sold by authorized TracFone retailers, all of which carry a manufacturer's warranty.

67. In addition, removing the Phones from the original packaging and altering the software irreparably harms TracFone because it deprives TracFone of the means to control the quality of its product.

68. The conduct of Defendants, their unknown co-conspirators, and others who engage in the unlawful bulk purchasing, reflashing, and sale of reflashed and altered TracFone Prepaid Phones has also resulted in a shortage of available TracFone Prepaid Phones, thereby substantially harming TracFone and its

relationship with retailers and consumers because TracFone is not able to supply retailers with sufficient handsets to satisfy the demand from legitimate consumers. As a result, TracFone loses potential customers to competing wireless service providers.

69.     Defendants' actions substantially harm TracFone and consumers who ultimately purchase TracFone handsets that have been improperly reflashed. These reflashed TracFone Prepaid Phones will not work as intended. Purchasers of these reflashed phones are unable to access TracFone Prepaid Wireless Service. Consumers of the reflashed phones are misled as to the source, sponsorship and origin of their reflashed wireless phone.

70.     The process of reflashing or unlocking a TracFone Prepaid Phone voids the manufacturer's warranty on the device.   In addition, the sale of a TracFone Prepaid Phone outside of the United States also voids the manufacturer's warranty.  Both consumers and TracFone are harmed when a TracFone Prepaid Phone that has been altered or sold outside of this country by Defendants or their co-conspirators is submitted for warranty repair.  Because the warranty is voided on reflashed Phones or Phones sold abroad, consumers who purchase Phones from Defendants or their co-conspirators are unable to obtain warranty service in the

event they experience problems with their Phones. As a result, TracFone's reputation suffers further.

71. Defendants' conduct has also resulted in the dilution of TracFone's trademarks, substantial harm to TracFone's business reputation and goodwill and a greater likelihood of confusion, mistake and deception as to the source of origin of TracFone products unlawfully sold by the Defendants and as to the relationship between TracFone and Defendants.

## CIVIL PROCEEDINGS IN OTHER FEDERAL COURTS

72. Federal courts have recognized that conduct similar or identical to Defendants' violates existing civil laws.

73. TracFone has filed various independent lawsuits in the United States District Courts for the Southern District of Florida, the Middle District of Florida, the Northern District of Texas, the Southern District of Texas, the Eastern District of New York, the Central District of California, the Western District of Pennsylvania, and the Northern District of Georgia against other defendants similarly engaged in the practice of defrauding legitimate consumers and TracFone, by bulk purchasing prepaid wireless telephones and reflashing, repackaging, and reselling the counterfeit prepaid wireless phones for profit. Other wireless service providers, including AT&T, T-Mobile USA, IDT, and Virgin

Mobile have also filed similar lawsuits, as have wireless handset manufacturers Nokia and Motorola.

74. TracFone, AT&T, T-Mobile, Virgin Mobile, IDT, Motorola and Nokia have all obtained Final Judgments and Permanent Injunctions in these cases, sample copies of which are attached hereto as **Composite Exhibit D.**

<u>COUNT ONE</u>
**FEDERAL TRADEMARK INFRINGEMENT**
**(Against all Defendants)**

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 74, as though fully set forth herein.

75. Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of the Federal Trademark Registrations without authorization in connection with their conspiracy to sell and offer for sale reflashed and counterfeit TracFone Prepaid Phones, which downstream customers will discover are not capable for use with the TracFone prepaid wireless service.

76. Defendants' and/or their co-conspirators' use of the Federal Trademark Registrations in connection with the sale of reflashed and counterfeit TracFone Prepaid Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' counterfeit products, and the relationship between TracFone and Defendants.

77.     Defendants' and/or their co-conspirators' unauthorized use of the Federal Trademark Registrations is likely to continue in the future, all to the great and irreparable damage to the business, reputation and goodwill of TracFone.

78.     Defendants' and/or their co-conspirators' use and sale of the Federal Trademark Registrations in connection with the reflashed and counterfeit TracFone Phones, which are no longer capable of use with the TracFone prepaid wireless service constitutes a misappropriation of TracFone's distinguishing and identifying Federal Trademark Registrations that were created as a result of effort and expense by TracFone over a long period of time.  Defendants' and/or their co-conspirators' use of the Federal Trademark Registrations evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association, or affiliation with TracFone, and thus constitutes false designation of origin.

79.     Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, TracFone and the reputation and goodwill of TracFone, and each has unjustly enriched and will continue to unjustly enrich his or herself or itself at the expense of TracFone.  TracFone is without an adequate remedy at law to redress such acts, and will be irreparably damaged

unless Defendants are enjoined from committing and continuing to commit such acts.

80. Defendants' aforesaid acts constitute willful infringement of TracFone's federally registered trademarks in violation of 15 U.S.C. §1114.

**COUNT TWO**
**FEDERAL UNFAIR COMPETITION**
**(Against all Defendants)**

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 80, as though fully set forth herein.

81. Defendants' conduct, described with more particularity in this Complaint, constitutes unfair competition in violation of 15 U.S.C. §1125(a).

82. TracFone has been damaged, or is likely to be damaged, by Defendants' conduct.

**COUNT THREE**
**BREACH OF CONTRACT**
**(Against all Defendants)**

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 74, as though fully set forth herein.

83. By purchasing TracFone Prepaid Phones, Defendants acknowledged and agreed to the Terms and Conditions included with each Phone as

conspicuously printed on the package and as contained in the printed inserts packaged with the Phones.

84. The Terms and Conditions constitute a valid binding contract between TracFone and Defendants.

85. TracFone has performed or tendered performance in accordance therewith.

86. Defendants have breached the Terms and Conditions by, inter alia, purchasing TracFone Prepaid Phones with the specific intent to reflash or unlock the phones or ship the phones outside of the United States.

87. TracFone has suffered damages as a result of Defendants' breach of the Terms and Conditions.

**COUNT FOUR**
**CONTRIBUTORY TRADEMARK INFRINGEMENT**
**(Against all Defendants)**

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 74, as though fully set forth herein.

88. By misappropriating and using the Marks in connection with the Bulk Resale Scheme, Defendants knowingly aided and enabled distributors and/or sellers of its products to market them to members of the general public in a way

that infringes the Marks by placing in the hands of distributors and/or sellers an instrument of consumer deception.

89.     Defendants' unlawful, unauthorized, and unlicensed sale of the reflashed or unlocked TracFone Prepaid Phones has thus contributed to the creation of express and implied misrepresentations that the TracFone Prepaid Phones, as sold by Defendants, were created, authorized, or approved by TracFone, and may be used with TracFone's prepaid wireless service.

90.     Upon information and belief, Defendants' conduct has led to post-sale confusion by causing consumers who purchase TracFone Prepaid Phones altered by Defendants to believe that they are purchasing handsets with software licensed or approved by TracFone.

91.     Defendants' conduct constitutes contributory infringement in violation of the Trademark Act. Defendants' conduct is intentional, malicious and willful.

92.     TracFone has suffered substantial damages as a result of Defendants' contributory infringement.

<u>**COUNT FIVE**</u>
**COPYRIGHT INFRINGEMENT OF THE PREPAID SOFTWARE**
**(Against all Defendants)**

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 74, as though fully set forth herein.

93. TracFone has the exclusive right to reproduce and prepare derivative works of its federally copyrighted TracFone Prepaid Software pursuant to 17 U.S.C. §106.

94. Defendants' and/or its co-conspirators' actions in reflashing or otherwise modifying the federally copyrighted TracFone Prepaid Software, without TracFone's authority or consent, creates an unauthorized derivate work of the TracFone Prepaid Software.

95. Defendants' and/or its co-conspirators' actions in improperly reflashing the federally copyrighted TracFone Prepaid Software, without TracFone's authority or consent, creates an unauthorized reproduction of the TracFone Prepaid Software.

96. Defendants know or should know their conduct constitutes copyright infringement under Title 17 of the United States Code.

97. Defendants' actions have damaged and will continue to irreparably injure TracFone unless Defendants' conduct is enjoined by this Court.

## COUNT SIX
## CIRCUMVENTION OF COPYRIGHTED SOFTWARE PROTECTION SYSTEM
### (Against all Defendants)

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 74, as though fully set forth herein.

98.    The TracFone Prepaid Software contains technological measures that in the ordinary course of the measures' operation require the application of information, or a process or a treatment, with TracFone's authority, to gain access to the proprietary software, as set forth in 17 U.S.C. §1201.

99.    The TracFone Prepaid Software contains technological measures that effectively control access to the proprietary software.

100.    TracFone did not give Defendants or their co-conspirators authority to reflash, unlock, or otherwise to avoid, bypass, remove, disable, deactivate, or impair the technological measures for effectively controlling access to and operation of the TracFone Prepaid Software.

101.    TracFone did not grant Defendants or their co-conspirators the authority to circumvent the technological measures for effectively controlling access to the TracFone Prepaid Software.

102.    Defendants acted, and/or knowingly engaged in a conspiracy, to avoid, bypass, remove, disable, deactivate, or impair a technological measure for effectively controlling access to the proprietary software without TracFone's authority.

103. Defendants engaged in this misconduct for the purpose of reselling the altered devices for a profit, and not for the sole purpose of lawfully connecting to a wireless telephone communication network.

104. Defendants acted to, and/or knowingly engaged in a conspiracy designed to circumvent a technological measure that effectively controls access to the TracFone Prepaid Software that is protected under title 17 of the United States Code, and thereby violated 17 U.S.C. §1201.

105. Defendants' conduct has caused and, unless restrained, will continue to cause TracFone severe, immediate, and irreparable injury and damages for which TracFone has no adequate remedy at law. TracFone is entitled to injunctive relief restraining such conduct, an award of damages, including punitive damages, as well as other equitable and legal relief.

## COUNT SEVEN
## TRAFFICKING IN CIRCUMVENTION TECHNOLOGY
### (Against all Defendants)

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 74, as though fully set forth herein.

106. Defendants are, or are knowingly facilitating co-conspirators who are in possession of certain instrumentalities that avoid, bypass, remove, disable, deactivate, or otherwise impair the technological measures within the TracFone

Prepaid Software that effectively control access to the proprietary TracFone Prepaid Software.

107. Defendants are, or are knowingly facilitating co-conspirators who are trafficking in the service of circumventing the technological measures that protect the TracFone Prepaid Software from alteration or modification.

108. Individuals purchasing altered phones from Defendants or their co-conspirators purchase both the TracFone Prepaid Phone and the service of circumventing the technological measures that protect the TracFone Prepaid Software from alteration or modification provided by Defendants or their co-conspirators.

109. Accordingly, Defendants are, or are knowingly facilitating co-conspirators who are, trafficking in the service of circumventing TracFone's technological measures that effectively control access to TracFone's Prepaid Software by offering to the public its alteration service for a fee.

110. The service of altering the TracFone Prepaid Software in TracFone Prepaid Phones is primarily designed or produced for the purpose of circumventing TracFone's technological measures that effectively control access to TracFone's Prepaid Software that is protected under title 17 of the United States Code.

111. Accordingly, Defendants have violated, and continue to violate, Section 1201 of the Copyright Act and, as a result, TracFone has been irreparably injured and will continue to be irreparably injured unless the violating activities of Defendants are enjoined by this Court.

112. The service of altering the TracFone Prepaid Software has, at most, only a limited commercially significant purpose or use other than circumventing TracFone's technological measures that effectively control access to TracFone's Prepaid Software that is protected under title 17 of the United States Code.

113. Therefore, Defendants have violated, and continue to violate, Section 1201 of the Copyright Act and, as a result, TracFone has been irreparably injured and will continue to be irreparably injured unless the violating activities of Defendants are enjoined by this Court.

**COUNT EIGHT**
**TORTIOUS INTERFERENCE WITH**
**CONTRACTUAL RIGHTS AND BUSINESS RELATIONS**
**(Against all Defendants)**

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 74, as though fully set forth herein.

114. TracFone had contracts and business relationships with certain parties wholly independent of Defendants.

115. TracFone had a reasonable expectancy of economic gain resulting from these contracts and business relationships.

116. Defendants engaged in intentional and malicious conduct, without privilege, that severely harmed the ability for TracFone to maintain and cultivate these contracts and business relationships.

117. Upon information and belief, Defendants induced a breach of contractual obligations and/or caused a third party to discontinue or fail to enter into an anticipated business relationship with TracFone.

118. Defendants' aforesaid acts have damaged TracFone.

119. Defendants' aforesaid acts are greatly and irreparably damaging to TracFone and will continue to greatly and irreparably damage TracFone unless restrained by this Court. TracFone is entitled to a preliminary and thereafter a permanent injunction prohibiting Defendants from tortiously interfering with TracFone's contracts and business relations.

## COUNT NINE
## CONSPIRACY TO INDUCE BREACH OF CONTRACT
### (Against all Defendants)

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 74, as though fully set forth herein:

120.  TracFone had valid and existing contracts with Runners and other original purchasers of the Phones ("Purchasers").

121.  Defendants had knowledge of the contracts between TracFone and Purchasers, and intended to, and in fact did, induce Purchasers to breach their contracts with TracFone.

122.  The breach of the contracts was proximately caused by Defendants' misconduct.

123.  TracFone suffered damages as a result.

**COUNT TEN**
**CIVIL CONSPIRACY IN VIOLATION OF GEORGIA COMMON LAW**
**(Against all Defendants)**

TracFone incorporates by reference each and every allegation set forth in Paragraphs 1 through 74, as though fully set forth herein.

124.  An agreement and conspiracy existed and continues to exist between and among the Defendants and other co-conspirators, to unlawfully bulk purchase, traffic and resell unlawfully reflashed and counterfeit TracFone Prepaid Phones under the Marks.

125.  Defendants each knowingly agreed to engage, and did engage, in one or more overt acts in furtherance of the conspiracy as set forth with more particularity in this complaint.

126.   TracFone has been proximately damaged by the conspiracy and Defendants' actions in furtherance of the conspiracy.

## COUNT ELEVEN
## COMMON LAW UNFAIR COMPETITION
### (Against All Defendants)

127.   TracFone incorporates by reference each and every allegation set forth in paragraphs 1 through 74, as though fully set forth herein.

128.   Defendants have engaged in unfair competition with TracFone in violation of the common law of Georgia by selling and/or offering, and promoting its unlocked or reflashed TracFone Prepaid Phones, with the intention of trading upon the goodwill established by TracFone and are thereby misappropriating the benefits of substantial effort and money expended by TracFone in establishing its rights in the TracFone Marks.

129.   The aforesaid acts of Defendants have been willful and deliberate.

130.   The aforesaid acts of Defendants have caused TracFone irreparable injury and unless restrained and enjoined by this Court, will continue to cause irreparable damage, loss, and injury to TracFone for which TracFone has no adequate remedy at law.

131.   The aforesaid acts of Defendants have injured TracFone in an amount to be determined at trial.

132. Defendants' acts are in violation of Georgia law and TracFone is entitled to a preliminary and thereafter a permanent injunction prohibiting Defendants from unfairly competing with TracFone.

## COUNT TWELVE
## UNFAIR COMPETITION (STATE)
### (Against all Defendants)

133. TracFone incorporates by reference each and every allegation set forth in paragraphs 1 through 74, as though fully set forth herein.

134. Defendants have and are engaged in acts or practices in violation of the prohibition against unfair competition found at O.C.G.A. § 23-2-55.

135. Defendants have used and are using the TracFone Marks in connection with the above-described scheme in such a manner as to misrepresent the source, sponsorship, approval, and/or certification of their products and services.

136. The use of the TracFone Marks by the Defendants creates the unreasonable risk that users may falsely conclude that there exists some affiliation, connection, or association between and among TracFone and Defendants.

137. Defendants' acts have damaged, impaired, and diluted that part of TracFone's goodwill and good name symbolized by the above-noted names and mark. The nature, probable tendency, and effect of Defendants' use of these

names and properties in the manner alleged are to enable Defendants to deceive the public.

138. Defendants' use of TracFone's name and mark and selling the devices to unlock and/or reflash the TracFone Prepaid Phones as alleged constitutes unfair competition as prohibited by O.C.G.A. § 23-2-55.

139. Defendants had actual knowledge of TracFone's rights at the time they decided to use the TracFone Marks in connection with their Bulk Resale Scheme. Thus, Defendants willfully and deliberately infringed upon TracFone's rights.

140. Defendants' unfair business practices are of a recurring nature and harmful to the consumers and the public at large, as well as TracFone. These practices constitute unlawful, unfair, and fraudulent business practices and unfair, deceptive, untrue, and misleading advertising.

141. As a result of Defendants' acts, TracFone has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court. Unless enjoined by this Court, Defendants will continue these acts, thereby causing TracFone further immediate and irreparable damage.

## COUNT THIRTEEN
## UNJUST ENRICHMENT
### (Against All Defendants)

142. TracFone incorporates by reference each and every allegation set forth in paragraphs 1 through 74, as though fully set forth herein.

143. Defendants' use of the TracFone Marks in connection with the advertising, promotion and sale of its unlocked or reflashed TracFone Prepaid Phones, from which Defendants have derived substantial profits, has unjustly enriched Defendants by enabling it to unfairly misappropriate the benefit of TracFone's extensive use and promotion of its Marks and the goodwill associated therewith.

144. By reason of the foregoing, Defendants have been unjustly enriched in an unknown amount, and TracFone is entitled to just compensation under the common law of the State of Georgia.

145. Defendants are continuing to earn revenues and profits to which they are not legally entitled, causing irreparable injury to TracFone by the aforesaid acts of Defendants for which TracFone has no adequate remedy at law.

146. The aforesaid acts of Defendants have injured TracFone in an amount to be determined at trial.

## COUNT FOURTEEN
## DECEPTIVE TRADE PRACTICES
### (Against all Defendants)

147.  TracFone incorporates by reference each and every allegation set forth in paragraphs 1 through 74, as though fully set forth herein.

148.  Defendants have and are engaged in acts or practices in violation of the prohibition against deceptive trade practices found at O.C.G.A. § 10-1-372 et seq.

149.  Defendants have used and are using TracFone's intellectual property (i.e., its proprietary computer software and the TracFone Marks) in connection with the above-described Bulk Resale Scheme in such a manner as to misrepresent the source, sponsorship, approval, and/or certification of their products and services.  The use of the TracFone Marks by Defendants creates an unreasonable risk that present and potential consumers and subscribers may falsely conclude that there exists some affiliation, connection, or association between and among TracFone and Defendants.

150.  Defendants' acts have damaged, impaired, and diluted that part of TracFone's goodwill symbolized by the TracFone Marks.  The nature, probable tendency, and effect of Defendants' use of these marks in the manner alleged are to enable Defendants to deceive the public.

151. Defendants' use of the TracFone Marks in the manner alleged constitutes deceptive trade practices of a type prohibited by O.C.G.A. § 10-1-372 et seq.

152. Defendants had actual knowledge of TracFone's rights at the time they decided to use TracFone's intellectual property in connection with their Bulk Resale Scheme. Thus, Defendants willfully and deliberately infringed upon TracFone's rights.

153. Defendants' unfair business practices are of a recurring nature and harmful to the consumers and the public at large, as well as to TracFone. These practices constitute unlawful, unfair, fraudulent, and deceptive business practices, and unfair, deceptive, untrue, and misleading advertising.

154. As a result of Defendants' acts, TracFone has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial, in excess of the jurisdictional amount-in-controversy requirements of this Court. Unless enjoined by this Court, Defendants will continue these acts, thereby causing TracFone further immediate and irreparable damage.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, TracFone Wireless, Inc., a Delaware corporation, respectfully requests that this Court enter final judgment and permanent injunctive relief in favor of TracFone and against Defendants Zip Wireless Products, Inc., a Georgia corporation, Timothy H. Yeager, individually, and William R. Yeager, individually as follows:

(a)  awarding TracFone its compensatory, consequential, statutory, special, treble, and punitive damages including, without limitation, its lost profits, loss of goodwill and damage to its reputation, as provided by law, together with pre and post-judgment interest;

(b)  awarding to TracFone restitution of all money and property unlawfully and unfairly taken by Defendants' through their unfair and unlawful conduct;

(c)  awarding TracFone permanent injunctive relief against Defendants enjoining Defendants from engaging in the unlawful practices described in this complaint;

(d)  requiring Defendants, pursuant to the Lanham Act, to deliver their entire inventory of phones bearing or infringing any of the Marks or a confusingly similar copy thereof, to TracFone;

(e)     awarding TracFone its reasonable attorneys' fees and costs of this

action; and,

(f)     granting such further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff TracFone hereby demands a trial by jury on all triable issues.

Dated: September 18, 2009     Respectfully submitted,

**CARLTON FIELDS, P.A.**

By: _____
      Gail Podolsky
      Georgia Bar No. 142021
      One Atlantic Center
      1201 West Peachtree Street, Suite 3000
      Atlanta, Georgia 30309
      Telephone No. (404) 815-3400
      Facsimile No. (404) 815-3415
      Email: GPodolsky@carltonfields.com

      -and-

      James B. Baldinger
      Florida Bar Number 869899
      1200 CityPlace Tower
      525 Okeechobee Boulevard
      West Palm Beach, FL 33401
      Telephone No. (561) 659-7070
      Facsimile No. (561) 659-7368
      Email: jbaldinger@carltonfields.com

      *Attorneys for Plaintiff TracFone Wireless, Inc.*